UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GEORGE BRYANT,                           :
             Plaintiff,               :
                                       :      12 CV 2940 (HB)
  - against -                              :
                                       :      **AMENDED**
MERRILL LYNCH, PIERCE, FENNER &      :      **OPINION & ORDER**
SMITH, dba BANK OF AMERICA MERRILL    :
LYNCH,                                   :
             Defendant.              :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff George Bryant brings a variety of race discrimination and retaliation claims under Title VII, § 1981, the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL"). For the reasons that follow, Defendant's motion for summary judgment is DENIED as to both Plaintiff's retaliatory termination claim as well as his claim that Defendant failed to promote him in 2010 in retaliation for his EEOC complaint. Summary judgment is GRANTED as to Plaintiff's remaining claims.

## BACKGROUND

      At all times relevant to this litigation, Plaintiff worked within the MLPro support team ("MLPro Support"), a part of the Professional Trading Services Group ("PTSG"). In addition to that support team, MLPro also housed business analyst and development teams. In 2006, Daniel Moore became head of the PTSG. And in October of that year, Richard Byron became Plaintiff's direct supervisor under Moore within MLPro Support.

      During the fall of 2006, Plaintiff and two other employees filed internal complaints against Arijit Bhattacharya, another of Plaintiff's managers. Those complaints alleged, *inter alia*, that Bhattacharya "ma[de] derogatory remarks about age, race[,] and ethnicity." (Stroup Decl. Ex. G., at ML 0461.) Although Defendant concluded that these complaints were largely uncorroborated, Bhattacharya nevertheless was removed from his managerial role.

      In 2009, Gerard Granata replaced Moore as head of the PTSG. In February of that year, Plaintiff complained that Richard Pascoe, one of Byron's peers within Merrill Lynch, treated Plaintiff more harshly because of his race. Plaintiff protested that Pascoe had the "[s]ame old mindset" of "[w]hip the negro at the back of the bus if he gets out of line." (Quigley Dep. Ex. 2,

1

at BANK00001443.)  And the following month, tension between Plaintiff and other employees grew.  This led to another of Byron's peers reporting Plaintiff's emails as "unprofessional," "provoking," and "personally insulting."  (Bryant Dep. Ex. 14, at ML0492.)

Eventually Moore, the former PTSG manager, learned of Plaintiff's accusations.  On February 25, 2009, Moore told Granata and John Cislo, Granata's superior, that Plaintiff had a "longer history" than the incident with Pascoe and that they all "should discuss" Plaintiff's complaint.  (Stroup Decl. Ex. W, at BANK00002265.)  Further, Moore believed that "a strong point" needed to be made to Plaintiff that "his behavior [was] completely inappropriate." (Moore Dep. Ex. 15.)  In particular, Moore noted Plaintiff's "introducing the racial overtones (without cause) into situations as he has done several times now."  (*Id.*)  Plaintiff then filed an EEOC charge on May 18, 2009 alleging racial discrimination and retaliation.

In June 2010, Jitender Batra replaced Granata as PTSG head.  Cislo informed Batra soon after his hire that Plaintiff had previously filed an EEOC complaint.  For 2010, Plaintiff received a pay increase to $125,000 from $120,360.  But a coworker, Abhijit Agrawal, received a raise to $130,000 from $120,360.  When Plaintiff complained that his salary was too low, Cislo responded that this pay increase was based on market data and was not a reflection of merit. (Stroup Decl. Ex. BB, at BANK00001846.)  In response to what he viewed as a stagnant salary, Plaintiff told Cislo that he was "certainly open to discussions for me moving along to another area/group ASAP."  (Cammarosano Dep. Ex. 2, at BANK00001464.)

The following year, in May 2011, Jayashankar Rudrachar replaced Batra as Plaintiff's manager.  On November 4, 2011, Rudrachar and another supervisor delivered a written warning to Plaintiff based on his unwillingness to provide weekly status reports or to perform certain assigned tasks, as well as his absences from work without notifying his managers.  That same day, Plaintiff forwarded to his personal email account 172 business emails, including some with attached documents.  Defendant's email security system flagged Plaintiff's activities.  According to Plaintiff, he forwarded these emails so that he would be able to respond to his written warning. And Plaintiff told Defendant that he would send any response he composed to the EEOC.

But on November 17, 2011, Rudrachar informed Plaintiff that he was no longer a manager in MLPro Support.  Plaintiff responded in front of other employees that Rudrachar "was the worst example of management that [he] [had] ever c[ome] across and that [Rudrachar's] style sucked."  (Bryant Dep. 314:7–23.)  And on November 28, Defendant fired Plaintiff.  Plaintiff's

2

supervisors explained that his termination was for violating Defendant's email policy and for the inappropriate manner in which Plaintiff spoke with his managers.

## DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* Nevertheless, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### A.  Race Discrimination Claims

Plaintiff's federal and state discrimination claims are all analyzed under the *McDonnell Douglas* burden-shifting framework. To demonstrate a prima facie case for discrimination under this framework, Plaintiff must show that "(1) he is a member of a protected class; (2) he is qualified for the position in question; (3) he suffered an adverse employment action; and (4) the surrounding circumstances give rise to an inference of discrimination based on the plaintiff's membership in the protected class." *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 358 (S.D.N.Y. July 7, 2006) (citing *Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 767 (2d Cir. 2002)). If Defendant then produces evidence of a "legitimate, non-discriminatory reason" for the adverse action, Plaintiff must "present sufficient evidence . . . that discriminatory reasons were 'at least one of the motivating factors'" in Defendant's decision. *Id.* (quoting *Vergara v. Yonkers Pub. Schs.*, 386 F. Supp. 2d 377, 384–85 (S.D.N.Y. 2005)). While the NYCHRL in some respects is broader than federal and state law, Plaintiff must still demonstrate that "the conduct [was] caused at least in part by discriminatory . . . motives." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, No. 11-3361-cv, 2013 WL 1776643, at *7 (2d Cir. Apr. 26, 2013).

### 1.  Disparate Pay

I turn first to Plaintiff's disparate pay claims. To make out a prima facie case, such claims require first that Plaintiff demonstrate "that he was paid less than similarly-situated non-members of his protected class." *Trotman v. CBS Radio Inc.*, No. 06 Civ. 3389, 2007 WL 2827803, at *8 (S.D.N.Y. Sept. 27, 2007) (citing *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999)). Any comparators "must be similarly situated in all material respects" with Plaintiff.

*McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001). In other words, "there must be an 'objectively identifiable basis for comparability' between the plaintiff and the comparator employee" that raises an inference of discrimination when a defendant treats those employees differently. *Llanos v. City of N.Y.*, No. 11 Civ. 3953, 2012 WL 5457916, at *9 (S.D.N.Y. Nov. 7, 2012) (quoting *Graham v. Long Island R.R.*, 230 F3d 34, 40 (2d Cir. 2000)).

Two of the individuals with whom Plaintiff seeks to compare himself, Jose Suris and Abhijit Agrawal, are not similarly situated with Plaintiff. For openers, Defendant hired Suris four years before Plaintiff and Suris had held the title of Vice President since 2001. Plaintiff, on the other hand, was promoted to Vice President only in 2008. These differences in their respective tenures render Suris an inappropriate comparator. *See, e.g.*, *Simpson v. Metro-North Commuter R.R.*, No. 04 Civ. 2565, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) (plaintiff's disparate pay claim failed because employees were not similarly situated regarding "seniority and performance history").

Similarly, Plaintiff and Agrawal have different performance histories at Merrill Lynch. Focusing on their differentials in pay, Plaintiff compares his improved performance ratings in 2007, from a 2 to a 4, with Agrawal's decrease from a 4 to a 3. But rather than establishing discrimination, these divergent ratings demonstrate why Agrawal is an inappropriate comparator. *See DeJesus v. Starr Technical Risks Agency, Inc.*, No. 03 Civ. 1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004) (evidence that comparator "performed better" was a material difference). Indeed, Agrawal never received ratings as low as Plaintiff did. And because neither Agrawal nor Suris are appropriate comparators, Plaintiff cannot cite their higher pay as discriminatory.

Plaintiff's remaining comparators fare somewhat better. But Plaintiff still fails to carry his ultimate burden of showing discriminatory animus. These comparators include Alexandra Adamovich, Christopher Scarpa, David Gordon, Charles Greenberg, Gary Girvan, and Vincent Difortuna. All of these individuals were managers in MLPro's business analyst or development teams. By contrast, Plaintiff was a manager in MLPro Support. According to Defendant, the business analyst and development teams were simply worth more to Merrill Lynch than the support teams. Defendant based this conclusion on the view that these units performed "higher level" work. (Moore Dep. 110:5–14, 110:19–111:3.)

4

Thus, even if these comparators' similar managerial duties are sufficient for a prima facie case, Defendant has met its burden to produce a nondiscriminatory explanation for the pay disparities. With this explanation, the burden shifts then back to Plaintiff to demonstrate that his unequal pay "was motivated, at least in part, by a discriminatory reason." *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 152 (S.D.N.Y. 2011). But Plaintiff fails to establish discriminatory animus at this final *McDonnell Douglas* stage. *See, e.g.*, *McGuinness*, 263 F.3d at 53–56 (2d Cir. 2001) (prima facie case established based on similarly situated comparator, but gender claim still dismissed because plaintiff failed to meet ultimate burden of showing animus). Indeed, Plaintiff does not dispute that none of these employees managed support teams. Nor does Suris's pay demonstrate pretext. While Suris was a member of a support team and Plaintiff asserts that he received the same base pay as Adamovich and Scarpa, Suris also was hired in 1996. By contrast, Adamovich and Scarpa were hired in 2001. These different levels of experience do not cast doubt on Defendant's explanation when Suris was paid at comparable levels to Adamovich and Scarpa. Without more, a jury could not conclude "that it is more likely than not that impermissible discrimination was a motivating factor." *E.g.*, *Rouse v. City of N.Y.*, No. 08 Civ. 7419, 2009 WL 1532054, at *7 (S.D.N.Y. June 2, 2009).

Plaintiff's remaining comparator is Thomas Vayda. While Vayda may have been team lead of an MLPro support team, Vayda is not an appropriate comparator with Plaintiff. Vayda was hired in 2005, five years after Plaintiff's hire. Plaintiff and Vayda thus differ in material respects. *Lawrence v. Mehlman*, 389 F. App'x 54, 57 (2d Cir. 2010) (plaintiff was not similarly situated with alleged comparator because plaintiff "was significantly more experienced" than comparator). Accordingly, their disparate pay cannot form the basis for a discrimination claim. And without some evidence of falsity or discriminatory animus, Plaintiff fails to carry his ultimate burden.

**2. Discriminatory Failure-to-Promote**

Turning next to Plaintiff's discriminatory failure-to-promote claims, those claims also fail. Like his disparate pay claims, discriminatory animus is missing from the denial of Plaintiff's promotion to Vice President in 2007. Instead, Defendant promoted Plaintiff in 2008. Yet even if Plaintiff were eligible for an earlier promotion, there is no evidence that Defendant would therefore have been required to promote Plaintiff at that time. Management has some leeway to make promotion decisions as well as hiring and firing decisions so long as those

decisions are not discriminatory. *See Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions." (quoting *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986))). Nor is there any indication that anyone else was promoted instead of Plaintiff. Without evidence of discriminatory animus, Plaintiff fails to state a prima facie case. *See Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) ("In all cases . . . there must be proof that the plaintiff 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2010))).

And similarly, Plaintiff also fails to demonstrate discriminatory animus when in 2010 he was not promoted to replace his immediate supervisor, Richard Byron. But even assuming a prima facie case, Defendant's rationale for declining to promote Plaintiff is that Batra did not want to promote Plaintiff to team leader. According to Batra, this was because Plaintiff had expressed his desire to move to another group in search of better compensation. (Batra Dep. 22:7–23:6.) And indeed, Plaintiff fails to demonstrate any pretext whatsoever with this reason. While Plaintiff may not have refused the position outright, it is not pretextual for Batra to infer from Plaintiff's desire to leave MLPro Support that he would make an inappropriate supervisor for that team. Plaintiff's promotion claim therefore must fail. *See, e.g.*, *Lomotey v. Conn.-Dep't of Transp.*, 355 F. App'x 478, 481 (2d Cir. 2009) (prima facie case insufficient without other evidence of pretext or discrimination).

### 3. Discriminatory Termination

Plaintiff's final discrimination claim is that Defendant terminated him due to his race. In support of this view, Plaintiff points to numerous employees who were not fired when they violated Defendant's email policy. But despite this evidence, none of these employees were found to have any interpersonal or other disciplinary concerns leading up to their terminations. On the other hand, Plaintiff's supervisors formally warned him about his failures in many respects to do his job. Given this disciplinary action immediately preceding his firing, that Defendant did not terminate these other employees for violation of the email policy does not raise an inference of discrimination. *See Llanos*, 2012 WL 5457916, at *10 (inference of discrimination not demonstrated where Plaintiff and comparators did not share similar "history of disciplinary infractions").

Accordingly, all of Plaintiff's state and federal race discrimination claims must fail for lack of discriminatory motive. And because they fail on this ground, his race claims also fail under the NYCHRL. *Mihalik*, 2013 WL 1776643, at *7.

## B. Retaliation

Many of Plaintiff's race discrimination claims are also restyled as retaliation claims. And as with his discrimination claims, Plaintiff's retaliation claims are subject to the three-step burden-shifting program dictated by *McDonnell Douglas*. At the final stage of that analysis, Plaintiff "must show that retaliation was a substantial reason for the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). Because the federal and state retaliation claims on which summary judgment is granted fail because of the absence of retaliatory animus, they also fail under the broader NYCHRL. *Mihalik*, 2013 WL 1776643, at *7 (under NYCHRL, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives").

### 1. Plaintiff Fails to Demonstrate Retaliatory Animus for the Majority of His Claims

Examining first Plaintiff's 2006 performance review, Defendant's rationale for that review was that Plaintiff's communication skills "could be further improved" and that he "need[ed] to improve upon applications knowledge." (Bryant Dep. Ex. 7, at ML0050.) His written review also noted that Plaintiff's technical expertise needed to improve. Yet Plaintiff argues that these reasons were pretextual because Abhijit Agrawal and Vincent DiFortuna received similar comments in their written reviews. Both Agrawal and DiFortuna were rated higher than Plaintiff.

As with Plaintiff's disparate pay claim, however, Agrawal is also an inappropriate comparator for a retaliation claim. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (no pretext where comparators are not similarly situated). It is interesting to note that Agrawal was paid more than Plaintiff in 2007. Further, both Agrawal and DiFortuna were recent hires. Indeed, Defendant hired Agrawal in 2006 and DiFortuna in 2007. By contrast, Plaintiff began working at Merrill Lynch in 2000. Given these differences in experience, neither Agrawal nor DiFortuna are "similarly situated in all material respects" with Plaintiff. *Lawrence*, 389 F. App'x at 57; *cf. Graham*, 230 F.3d at 40 ("[A] plaintiff must show that her co-employees were

7

subject to the same performance evaluation and discipline standards."). Thus, without pretext or retaliatory animus, Plaintiff's claim as to his 2006 review must fail.

Plaintiff further urges that Defendant's failure to promote him to Vice President in 2007 was retaliatory. But Plaintiff identifies no retaliatory animus on that score. Nor is there retaliatory animus in relation to his bonus that year. Even if Moore's comments about Plaintiff's "longer history" with human resources could be construed as suggesting retaliation, Moore made those comments regarding Plaintiff's 2009 discrimination complaints—after he was not promoted in 2007 and after he received his 2007 bonus. Further, Defendant promoted Plaintiff to Vice President in 2008—also before Moore's comments. Thus, even assuming a prima facie case of retaliation on these grounds, a reasonable jury could not find that retaliatory animus motivated any of these decisions.

Similarly, Plaintiff has not demonstrated retaliatory animus with regard to his 2009 performance rating. Byron, Plaintiff's direct supervisor at the time, "had initially given [Plaintiff] a 3 or a 3 minus." (Byron Dep. 61:6–13.) But after discussing Plaintiff's rating with Granata, Plaintiff's review was reduced to a "2+." (Stroup Decl. Ex. S., at ML0077.) Defendant's rationale for this rating was that "the escalation with regard to a couple of significant production problems . . . could have been improved." (Byron Dep. 61:14–23.) Contrary to Plaintiff's assertions, his written review corroborates this assessment. That review stated that "[Plaintiff] needs to continue the momentum he has applied toward his advancement in using discretion for instances requiring escalation to upper management." (Stroup Decl. Ex. S, at ML0074.) Thus, nothing in the record demonstrates pretext or animus.

Plaintiff also contends that Cislo and Granata retaliated against Cindy Chan, another Merrill Lynch employee. Such retaliation, according to Plaintiff, may be analogized to Plaintiff's claim and thus show retaliatory animus in his own case. But while Cislo and Granata may have considered that employee's filing of a "compensation lawsuit" when they decreased the size of Chan's bonus (Stroup Decl. Ex. X, at BANK00002540), there is no indication that Chan's lawsuit was related to discrimination. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, No. 12-3489-cv, 2013 WL 1776646, *3 (2d Cir. Apr. 26, 2013) (to state claim for retaliation, plaintiff must engage in protected activity challenging employer's conduct in violation of "not just any law," but in violation of Title VII). Without having offered any reason to believe that Chan engaged in protected activity, Defendant's actions with regard to

Chan are not probative of retaliatory animus against Plaintiff. Therefore, Plaintiff's retaliation claim must fail here as well.

Similarly, Plaintiff also fails to demonstrate any animus regarding Defendant's refusal to increase his pay in 2010. Defendant argues that Plaintiff's pay was based on an analysis of market data rather than merit. In support of his claim, Plaintiff attempts to compare himself with Abhijit Agrawal. But as explained above, Agrawal is not an appropriate comparator. In further support of retaliation, Plaintiff also observes that Moore and others shared the fact that Bryant had previously complained of discrimination. But simply because Plaintiff's managers shared this knowledge does not mean that Defendant's reasons are pretextual. *See Blanco v. Brogan*, 620 F. Supp. 2d 546, 550, 560 (S.D.N.Y. 2010) (no retaliatory animus despite principal decisionmaker informing other upper-level employees of plaintiff's EEOC complaint). Without evidence that anyone acted upon that information, to infer a retaliatory nexus based only on the sharing of Plaintiff's EEOC complaint is purely speculative. Accordingly, Plaintiff has not demonstrated retaliatory animus on this claim.

## 2. Summary Judgment is Denied as to Retaliatory Termination and Failure-to-Promote

But two of Plaintiff's retaliation claims survive summary judgment. First, Plaintiff urges that retaliation prevented his promotion to replace Byron in 2010. In support of this claim, Plaintiff testified at deposition that Batra told him that Moore, Pascoe, and other managers "had some issues about the complaint I had filed." (Bryant Dep. 256:16–257:4.) Plaintiff further claimed that Batra told him he was "excluded" from consideration for that promotion "[b]ecause of the complaint that [Plaintiff] had outstanding." (*Id.* 257:9–20.) If this testimony is credited, a jury could readily conclude that retaliatory animus motivated Defendant's failure to promote Plaintiff as Byron's successor. Accordingly, summary judgment on this claim is denied.

And lastly, Plaintiff claims that Defendant retaliated against him when Defendant fired him for violating Merrill Lynch's email policy. But Plaintiff claims that he violated that policy only to gather evidence in support of his discrimination and retaliation claims. And indeed, the antiretaliation laws at issue here prevent an employer from retaliating "because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [that employee] has . . . participated *in any manner* in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added); *see Hicks v. Baines*, 593 F.3d 159, 161, 164 (2d Cir. 2010) (Title VII, § 1981, and NYSHRL retaliation claims "are analyzed

pursuant to Title VII principles"); *Mihalik*, 2013 WL 1776643, at *7 (noting NYCHRL's broad retaliation provisions). This clause affords "exceptionally broad protection" because "the term 'any' . . . [is] given literal effect." *Jute*, 420 F.3d at 174 (quoting *Deravin v. Kerik*, 335 F.3d 195, 204 (2d Cir. 2003)).

Despite this breadth, Defendant argues that because Plaintiff violated the email policy, his conduct does not satisfy the Ninth Circuit's balancing test used to identify protected activity. *See O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). But Defendant offers no support that the Second Circuit has adopted this test. And while the Second Circuit has suggested that complaints may be so insubordinate or disruptive that it is not retaliatory when an employer responds negatively, *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000), Plaintiff's emails do not rise to that level. Here, Plaintiff transgressed when he quietly forwarded proprietary emails to himself. Defendant did not discover this activity through any disruptive dissemination, but rather through Defendant's email security system. This activity, while a violation, was not so disruptive as to fall outside Title VII's ambit.

And to the extent that Defendant argues it had other legitimate reasons for firing Plaintiff, those reasons are insufficient to insulate Defendant from liability. *See Malacarne v. City Univ. of N.Y.*, 289 F. App'x 446, 447 (2d Cir. 2008) ("Where multiple motives are possible, plaintiff does not have to show that 'a retaliatory motive [was] the *sole* cause of the adverse employment action." (alteration in original) (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001))). Indeed, Defendant does not dispute that Plaintiff's conduct in violation of its email policy was a substantially motivating factor in Plaintiff's dismissal. Thus, in relation to his termination, Plaintiff's retaliation claim survives.

## CONCLUSION

For the foregoing reasons, summary judgment is DENIED as to both Plaintiff's retaliatory termination claim as well as his claim that Defendant retaliated against him by failing to promote him in 2010. Summary judgment is GRANTED as to Plaintiff's remaining claims. The Clerk of the Court is instructed to close this motion and remove it from my docket.
**SO ORDERED.**

Date: _____
New York, New York

HAROLD BAER, JR.
United States District Judge

10